IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBRA SORENSEN,<br><br>     Plaintiff,<br><br>vs.<br><br>FRATERNAL ORDER OF THE EAGLES, LOCAL CHAPTER 200 and GRAND AERIE OF THE FRATERNAL ORDER OF EAGLES,<br><br>     Defendants. | Case No.  8:11-CV-258 |

PLAINTIFF'S BRIEF IN OPPOSITION TO

GRAND AERIE OF THE FRATERNAL ORDER OF EAGLES'
MOTION FOR SUMMARY JUDGMENT
and
FRATERNAL ORDER OF THE EAGLES, LOCAL CHAPTER 200's
MOTION FOR SUMMARY JUDGMENT

Michelle D. Epstein, #21936
AUSMAN LAW FIRM PC LLO
1015 N. 98th Street, Ste. 102
Omaha, NE  68114
Telephone: 402-933-8140
Facsimile:  402-718-9423
michelle@ausmanlawfirm.com

ATTORNEY FOR PLAINTIFF

<u>TABLE OF CONTENTS</u>

Introduction………….......................................................................................................1

Statement of Material Facts.......................................................................................1

Response to Grand Aerie's Statement of Material Facts…………………………………11

Argument

I.   PLAINTIFF'S CLAIMS ARE NOT TIME BARRED AS THE AMENDED
     COMPLAINT RELATES BACK TO THE DATE OF THE ORIGINAL
     COMPLAINT PURSUANT TO F.R.C.P. 15(c)(1) …………...….…..……………24

     A.   Plaintiff's Amended Complaint "changes the party or the naming of
          the party against whom a claim is asserted" by adding "Grand Aerie
          of the Fraternal Order of Eagles" as a Defendant………………………….26

     B.   Grand Aerie received such notice of the action that it will not be
          prejudiced in defending on the merits and knew or should have
          known that the action would have been brought against it, but for a
          mistake concerning the proper party's identity……………..……………30

II.  PLAINTIFF EXHAUSTED HER ADMINISTRATIVE REMEDIES AGAINST
     GRAND AERIE BEFORE FILING SUIT…………………………………………38

     A.   Grand Aerie had actual notice and participated in the EEOC
          procedure………………………………………..…………………………38

     B.   There is a substantial identity between Local Chapter #200 and
          Grand Aerie such that notice to #200 can be considered notice to
          Grand Aerie..……………………………………………………………43

III. GRAND AERIE IS NOT A PRIVATE MEMBERSHIP CLUB AND EVEN IF IT
     WERE, GRAND AERIE IS RESPONSIBLE AND REMAINS LIABLE FOR
     KINMAN'S CONDUCT AND THE CONDUCT OF THE LOCAL #200
     TRUSTEES …………………………………………………....………………….47

IV.  GRAND AERIE ACTED AS PLAINTIFF'S EMPLOYER DURING THE TIME AT
     ISSUE AND EVEN IF IT DID NOT, GRAND AERIE IS RESPONSIBLE AND
     LIABLE FOR KINMAN'S CONDUCT AND THE CONDUCT OF THE LOCAL
     #200 TRUSTEES……………………………………….……………………….49

V.   SUMMARY JUDGMENT IS NOT APPROPRIATE WITH RESPECT TO
     PLAINTIFF'S SEX DISCRIMINATION CLAIM, AS THE EVIDENCE
     ESTABLISHES A PRIMA FACIE CLAIM AND THE RECORD COULD LEAD A

RATIONAL TRIER OF FACT TO FIND FOR PLAINTIFF KATRINA HOLTORF, AND THUS DEMONSTRATES THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT FOR TRIAL..…………………………………………………………………………………..54

    A.     Plaintiff suffered an adverse employment action…………………………..54

    B.     Issues of fact remain as to whether the circumstances give rise to an inference of discrimination……………………………………………………56

VI.   SUMMARY JUDGMENT IS NOT APPROPRIATE WITH RESPECT TO PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM, AS THE RECORD COULD LEAD A RATIONAL TRIER OF FACT TO FIND FOR PLAINTIFF, AND THUS DEMONSTRATES THE EXISTENCE OF A    GENUINE    ISSUE    OF MATERIAL                                        FACT                                        FOR TRIAL..……………………………………………………………………………………..56

CONCLUSION..............................................................................................................65

INTRODUCTION

Both Defendants have filed Motions for Summary Judgment.  Fraternal Order of the Eagles, Local Chapter 200 (hereinafter, "#200") has not filed a Statement of Material Facts in conformity with NECivR 56.1 and does not cite to or offer any evidence in support of its Motion.  Local Chapter 200's motion should be denied on these grounds alone.  To the extent the Court does not deny the motion on these grounds, Plaintiff asserts the arguments set forth in this Brief in opposition to both Defendants' Motions for Summary Judgment.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS WHICH PRECLUDE SUMMARY

JUDGMENT

Pursuant to NECivR 56.1(b)(1), Plaintiff presents the following statement of material facts which require denial of the Defendants' motions for summary judgment.

1.     Plaintiff Debra Sorensen is a female, is a citizen of Nebraska, and resides in Fremont, Nebraska.  Ex. 3, 16:17-18.

2.     Plaintiff was hired by Fraternal Order of Eagles, Local Chapter 200 ("hereinafter, #200") in August 2007 and worked as a bartender.  Ex. 3, 62:8-11.

3.     Plaintiff's supervisors were the #200 Trustees – Jeff Clark, Mike Saxton, Paul Mittura, and Scott VonSeggern, and bar manager Mike Saxton.  Ex. 3, 66:10-14; 67:23-68:14.  Mr. Clark was "head trustee" of Chapter 200.  Ex. 3, 147:6-25.  There were no women Trustees.  Ex. 7, 8:12-13.

4.     When Plaintiff began working at #200, she was not provided any policy regarding harassment or any other employment procedure.  Ex. 3, 80:1-7.

5.     During Plaintiff's employment, she was subjected to unwelcome, inappropriate, and unwelcome sexual harassment by her supervisors and coworkers. Ex. 3, 133:13-24; Ex. 9, ¶ 3, 4, 5.

6.     Grand Aerie advised Local Chapter 200 on or about March 16, 2009 that Grand Aerie was suspending #200's charter as an aerie of the Fraternal Order of Eagles; that an Agent was assigned into the Aerie by the Grand Worthy President; and that the Agent shall be authorized to act immediately.  Ex. 12.

7.     Kinman was commissioned as an Agent by the Grand Aerie on September 1, 2009, but acted as Agent for #200 as early as May 2009.  Ex. 13.  The Commission document makes clear that Kinman is authorized to represent all Aeries in all matters provided for in Section 39.4 of the Statutes, F.O.E., including those dealing with the Grand Aerie and third persons or entities; to exercise all rights and powers of the Aerie Trustees, other Officers and Members at business meetings and shall perform all the

4

duties of the Aerie Trustees, officers and members particularly in dealing with Local, State or Federal Government departments, boards or commissions thereof, for the sole benefit of the Local Aerie.  Ex. 13.

8.     Local Chapter #200 has never regained its charter.  (Ex. 4, 90:9-14)

9.     During the times relevant to this lawsuit, Mr. Vince Kinman, Field Service Manager of the Grand Aerie, acted as an agent for Local Chapter 200 and oversaw all business operations at Local Chapter 200, including investigating and responding to workplace harassment claims, holding meetings at #200, suspending and terminating members; and training and assisting #200 members and officers. Ex. 8, 12:7-13:1; 14:25-15:6; Ex. 5, 9:21-10:14; 22:2; 34:16-24; Ex. 6, 51:4-16.

10.    After #200's charter was suspended, a meeting was held at #200 where members were advised that Grand Aerie had authority over the club and any decisions of the club would have to be authorized by Kinman.  Ex. 5, 10:15-11:16.

11.    Local Chapter #200 Trustees and members believed Kinman was in charge of the club during the time of the charter suspension.  Ex. 5, 9:19-10:1; 24:18-22; Ex. 3, 80:24-81:17.

12.    Plaintiff believes now and during her employment that the Grand Aerie is at the top and oversees and is in control over the local Aeries all over the United States. Ex. 3, 80:24-81:17.

13.    Jeff Clark kept in very close contact with Kinman during the time #200's charter was suspended.  Clark contacted Kinman about situations with employees and Kinman would give him advice about what to do.  Ex. 6, 54:5-56:10.

14.     After #200's charter was suspended, bar manager Mike Saxton would exchange e-mails with Kinman about various employment issues.  Ex. 5,14:13-25. In April 2009, Clark began talking to Plaintiff about "blow jobs."  On at least three separate occasions in April and May 2009 while Plaintiff was bartending at #200, Clark approached her and said "I'll be back tonight after everyone leaves for a blow job."  Ex. 3, 134:9-25. Clark would do this while Plaintiff was standing behind the bar and had no means of escaping him.  Clark would lean over the bar in a very threatening and intimidating way. Ex. 9, ¶ 4.  Clark would make eye contact with Plaintiff while she was behind the bar and look at Plaintiff in a very threatening and menacing manner.  Plaintiff felt that he was trying to intimidate her with his sexual comments.  Ex. 9, ¶ 4, 5. On at least one occasion, Clark's remark was witnessed by an Eagles club member.   Ex. 3, 137:12-21.

15.     Plaintiff was humiliated by Clark's behavior toward her and became scared to work alone with Clark. Plaintiff would have her husband and son come to the Local Chapter 200 while she was closing up so that she did not have to be alone with Clark.  Ex. 9, ¶ 5.   Plaintiff became terrified to walk to her car by herself.  Her heart would start pounding so hard that it felt like it would jump out of her chest.  One night Plaintiff was so afraid of Clark following her to her car that she called the Fremont Police Department and asked if an officer could come sit in the parking lot in a car while Plaintiff walked to her car.  The police department sent an officer to do so.  Ex. 9, ¶ 5.

16.     Vince Kinman attended a meeting in Fremont, Nebraska at #200 on or about May 5, 2009. Ex. 4, 40:25-41:4.  The purpose of the meeting was for Kinman to address the membership and let them know that his job was to make changes and try to

correct the problems that were happening at the local aerie.  Ex. 4, 41:5-12.  Grand Aerie served a notice of meeting to #200 and various local officers.  Ex. 21.

17.     Plaintiff was present at the meeting described in the preceding paragraph and heard Kinman tell the attendees that if any person at #200 had any problems or wanted to discuss anything, they should not hesitate to get in touch with him.  Ex. 3, 151:17-25.  Kinman handed out his business cards to several people at that meeting. Ex. 3, 151:24-152:9.

18.     Plaintiff knew that Kinman was a field service manager and his job was to oversee the Fremont Eagles. Ex. 3, 153:23-154-5.

19.     On or about May 7, 2009, after the event described in paragraph 19 above, Plaintiff telephone Vince Kinman.  Ex. 3, 157:150.   Plaintiff told Kinman that she had a problem and needed his help.  Plaintiff told Kinman about the incidents described in paragraph 15 above.  Ex. 3, 160:9-20.   Kinman stated that he would suspend Clark for 90 days; that Clark would no longer be an Eagle; and that he would be removed the following Monday after a meeting was held at #200.  Ex. 3, 160:22-161:5.

20.     In mid to late May 2009, another bartender at #200, Katrina Holtorf, called Vince Kinman and told him that she felt she had been assaulted and sexually harassed by Clark and that she was no longer comfortable working with Clark.  Ex. 2, 192:23-193:10. Kinman told Plaintiff that she was not the only employee who had complained about Clark; assured Plaintiff that she would no longer have to work with Clark, and assured Plaintiff that Clark would be "fired."  Ex. 2, 193:11-14.

21.     Kinman did nothing to address Clark's behavior.  Clark was not removed from #200.  Clark's harassment continued.  Clark again approached Plaintiff while she was working at the bar and said "I'll be back tonight for that blow job."  Ex. 3, 150:22-24.

22.     Some time in late May 2009, Clark held a staff meeting in his office at #200.  Ex. 3, 139:23-141:18.  Plaintiff, Katrina Holtorf, Mike Saxton, Jodi Cartwright, and Cheri Bollig were present.  Ex. 2, 153:10-13; Ex. 3, 140:24-141:10.  Clark started the meeting by putting his leg up on his desk, which revealed that Clark had a huge hole in his pants in the crotch area.  Clark also scratched his crotch area during the entire meeting.  Ex. 2, 153:2-21. As Plaintiff walked into the office, Clark said to her, in front of other employees, "Hey bitch, crawl under this desk and get started on your job."  Clark leaned back in his chair while he said this and gestured to his genitals.  Ex. 3, 140:22-9.

23.     After Clark made the comment described in the preceding paragraph, Plaintiff also spoke with bar manager Mike Saxton and told him about Clark's "blow job" comments.  Ex. 3, 150:6-151:8.

24.     Near the end of May 2009, hearing nothing from Kinman and seeing no change in Clark's behavior, Plaintiff called Kinman again.  Ex. 3, 162:3-20.

25.     During the second telephone call with Kinman, Plaintiff asked Kinman why Clark was still at #200 and why Kinman had not yet removed Clark from his position.  Ex. 3, 165:8-22.  Kinman replied that he could not just snap his fingers and remove Clark; it wasn't that easy; and that Plaintiff should keep her mouth shut because #200 had enough problems.  Ex. 3, 165:10-22.

26.    Kinman did not speak to anyone at #200 or take any action to investigate Katrina Holtorf's or Plaintiff's complaints from the time Plaintiff called him in May until June 3, 2009.  Ex. 4, 65:4-11.

27.    On June 3, 2009, Kinman received a telephone call from Cheri Bollig, an employee at #200.  Bollig told Kinman that Jeff Clark had admitted to her that he had made the "blow job" comment to Debra Sorenson at the bartender meeting described in paragraph 13, above. Ex. 4, 63:15-64:16.

28.    After receiving the call from Cheri Bollig, Kinman called Jeff Clark on the same day.  Clark admitted that he had asked #200 employees to "suck his dick under the desk."  Ex. 4, 58:11-59:3. Clark was removed from his office as Head Trustee and placed on a 90-day membership suspension by Kinman during June 3, 2009 telephone call.  (See, Ex. K)

29.    Clark's suspension was to expire and he was to be allowed to visit the social room again on September 1, 2009.  (Ex. K)

30.    Kinman telephoned Clark to notify him of his suspension and let him know that four women had brought sexual harassment complaints to him about Clark – including Plaintiff, Debra Sorensen, and Jodie Cartwright. Ex. 6, 17:19-19:24.  Clark did not disagree with anything Kinman told him during the phone call.  Ex. 6, 21:17-20.

31.    Clark had no choice but to accept Kinman's suspension, as Kinman was a superior from Grand Aerie.  Ex. 6, 48:22-49:9.

32.    After suspending Clark, Kinman did not conduct any investigation into the work environment at #200; did not speak to anyone about Clark; was not concerned that

#200 had a sexual harassment problem; and did not feel it was necessary to follow up with respect to the situation with Clark. Ex. 4, 81:16-84:2.

33. After Clark's suspension ended, he was allowed to return to #200 and was appointed by the Trustees to be "entertainment chairman." Ex. 3, 180:21-181:6.

34. Plaintiff did a great job in her work as a bartender at #200; was a great worker; was speedy and efficient; and had a great personality. Ex. 5, 36:14; Ex. 6, 63:10-15.

35. On or about December 18, 2009 Plaintiff was terminated from employment at #22 when the bar manager stopped putting her on the work schedule. Ex. 3, 182:6-23.

36. Prior to December 18, 2009, Plaintiff had never been disciplined in any way in her bartending position with the Eagles. Ex. 3, 79:24-1. She was told she was doing a good job. Ex. 3, 79:19-23.

37. Plaintiff had the distinct feeling and impression that the Trustees at #200 stopped scheduling her to work and terminated her because she had complained about Jeff Clark's sexual harassment. Ex. 9, ¶ 6.

38. Clark's membership at #200 was never terminated and he continues to be a member of #200. Ex. 6, 16-23.

39. Plaintiff did not witness Jeff Clark make sexually inappropriate statements or gestures to male employees of Chapter #200 in the same way that Jeff Clark did to Plaintiff. Ex. 9, ¶.

40. As of March 1, 2009, there were 1,629 local aeries of the Fraternal Order of Eagles. Grand Aerie had 616,973 members. Ex. 10.

41.     Grand Aerie distributes a sexual harassment policy to each local aerie to be placed on a bulletin board or a place for members and employees to see.  This is to provide training so the local aeries can conduct their affairs.  Ex.4, 68:14-71:14

42.     Plaintiff is not now and has never been a member of the Fraternal Order of Eagles.  Ex. 9, ¶ 8.

43.     As a nonmember of the Eagles, Plaintiff could not ask that Clark's membership be terminated. Ex. 4, 86:12-24.

44.     On or about December 18, 2009, the same day she was terminated from employment, Plaintiff filed a charge of discrimination against the Fraternal Order of Eagles with the United States Equal Employment Opportunity Commission.  Ex. K.

45.     Although Plaintiff knew Kinman was from Grand Aerie at the time she filed her EEOC charge, she did not understand the relationship between Fraternal Order of Eagles, Chapter #200 and Grand Aerie of the Fraternal Order of Eagles.  Ex. 3, ¶ 9. Plaintiff believed they were both part of the same organization and believed that Vince Kinman was in charge of what went on at #200 in light of the fact that he seemed to be making decisions about what was going on at #200 in Fremont, Nebraska.  Ex. 3, ¶ 9.

46.     Plaintiff advised the EEOC that her "Employer" was "Fraternal Order of Eagles, 1623 Gateway Circle S., Grove City, OH." Ex. K.

47.     Plaintiff's perfected Charge of Discrimination with the EEOC mentions "Field Vince Kidman" and "Respondent's headquarter facility in Ohio." Ex. M.

48.     On or about May 4, 2011, the United States Equal Employment Opportunity Commission issued a Determination finding reasonable cause to believe

that the Local Chapter 200 had a working environment in which Plaintiff and other females were subjected to sexual harassment, in violation of Title VII.  Ex. R.

49.     Kinman ceased acting as Agent for #200 in November 2011, at which time a new Agent, Scott Houghtaling, was appointed.  Ex. 4, 90:18-24.

50.     Kinman and Scott Houghtaling kept Grand Aerie apprised of what was happening in this lawsuit prior to the filing of the Amended Complaint.   Ex. 14.

## PLAINTIFF'S RESPONSE AND OBJECTIONS TO GRAND AERIE'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to NECivR 56.1(b)(1), Plaintiff responds to Grand Aerie's alleged statements of undisputed material facts as follows:

1.     Admitted.

2.     Admitted in part.  Plaintiff admits that the *stated* purpose of Grand Aerie is as alleged by Grand Aerie.

3.     Admitted in part.   Plaintiff admits that the Grand Aerie Constitution contains the language quoted by Defendant in this paragraph.   The material cited by Defendant does not support the allegation that members of Grand Aerie actually do so.

4.     Denied.   Plaintiff objects to the materials found at "Index Ex. B at ¶ 13" and objects to Exhibit B in its entirety, on the basis that (a) Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Creighton Thurman as an expert witness in this matter; (b) the statement contained in ¶ 13 is a legal conclusion and is not properly attested to by a lay witness; and (c) the statement contained in ¶ 13 lacks foundation.  Plaintiff objects to the citation to materials found at

"Index Ex. C at ¶ 5", on the basis that (a) the statement contained in ¶ 5 is a legal conclusion and is not properly attested to by a lay witness and (b) the statement lacks foundation.    Lastly, the materials cited by Defendant at Ex. F do not support the allegation in paragraph 4 and the allegation in paragraph 4 is not an assertion of fact but is a legal conclusion.

5.    Admitted in part.  Plaintiff admits that the Grand Aerie Constitution (Ex. F) sets forth policies and procedures for Grand Aerie and local aeries and denies the remainder of paragraph 5, as Ex. F is a document which speaks for itself.

6.    Admitted in part.  Plaintiff admits that the language contained in Ex. F, Article III, Section 1(a)-(b) at pg. 3 addresses the makeup of the Grand Aerie, but denies that the Grand Aerie's membership is "limited" and alleges that Ex. F is a document which speaks for itself.  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 7" and objects to Exhibit B in its entirety, on the basis that (a) Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Creighton as an expert witness in this matter.

7.    Denied.   Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 7" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Creighton as an expert witness in this matter and (b) Ex. F is a document which speaks for itself. Further, the citation to "Index Ex. F, Title III, Section 75.3 at p. 71 does not support the allegations of paragraph 7.

8.    Admitted in part.   Plaintiff admits that Grand Aerie membership votes about rules and procedures of the organization at annual conventions.   Plaintiff denies

that Grand Aerie is "entirely controlled by its own membership," as Grand Aerie is also "controlled" and governed by the Constitution.  Ex. F.

9.    <u>Denied</u>. Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 10" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as an expert witness in this matter.

10.    <u>Denied</u>.  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 11" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as an expert witness in this matter.

11.    <u>Admitted</u>.  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 12" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as an expert witness in this matter.

12.    <u>Admitted</u>.

13.    <u>Denied</u>.  Paragraph 13 contains a legal conclusion.  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 14" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as an expert witness in this matter.  Plaintiff admits that Ex. F, Article VIII, Section 1 contains the language "The Grand Aerie shall not be financially or otherwise responsible to anyone for acts or omissions on the part of any State, Provincial, or Local Aerie . . . ."  However, Ex. F also states in Section 39.4.(a) "The Grand Worthy President shall commission an Agent to represent a

suspended Aerie.  The Agent is vested with all the powers of the Trustees and all other Aerie Officers and members, including but not limited to, the authority to act on behalf of the Aerie in all legal and governmental matters."  Because Local Chapter #200's charter was suspended, Grand Aerie appointed it's agent, Vince Kinman, to act as Agent for #200.  Ex. 4, 40:7-24.  Kinman represented #200 and stood in the shoes of the #200 Trustees. Ex. F, Section 39.4(a).  Grand Aerie is therefore responsible for the conduct of #200, by virtue of Kinman's agency.  Ex. F, Section 39.4(a).

14.   <u>Admitted in part</u>.  Plaintiff denies paragraph 14 to the extent Vince Kinman, as Agent of Grand Aerie and Agent of #200, was vested with the power of the Trustees and was able to "mandate" the operations of #200.  Ex. F, Section 39.4(a).  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 14" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as an expert witness in this matter.

15.   <u>Admitted in part</u>.  Plaintiff admits that under normal circumstances, #200 maintains its own local house rules and by-laws governing its day-to-day operations.  Plaintiff denies paragraph 15 to the extent #200's charter was suspended and Vince Kinman, as Agent of Grand Aerie and Agent of #200, was vested with the power of the Trustees and was able to govern the day-to-day the operations of #200.  Ex. F, Section 39.4(a).  Further, the Grand Aerie Constitution also governs the day-to-day operations of #200.  Ex. 4, 13:4-10.  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 17" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not

disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as a witness or expert witness in this matter.

16.   <u>Admitted in part</u>.  Plaintiff admits that Ex. F, Section 89.10 provides that under normal circumstances, "operation of the social rooms and the conduct of members and guests in such social rooms, the House Rules and By-Laws of the Local Aerie are the exclusive governing authority" and that Ex. F, Section 89.11 provides "the By-Laws of the Local Aerie govern the employment of officers or members of the Aerie . . . ."  Plaintiff denies that these issues were "exclusively governed" by #200's rules and bylaws, as #200's charter was suspended; Vince Kinman was Agent of Grand Aerie and Agent of #200, was vested with the power of the Trustees and was able to govern the employment of officers or members, the operation of social rooms, and the conduct of members and guests in such social rooms.  Ex. F, Section 39.4(a). Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 18" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as a witness or expert witness in this matter.

17.   <u>Admitted in part</u>.  Plaintiff admits that Ex. F provides that under normal circumstances, #200 elects its own members and is governed by its own Board of Trustees and other officers.  In this case, #200's charter was suspended; Vince Kinman was Agent of Grand Aerie and Agent of #200, was vested with the power of the Trustees and was able to "govern" #200.  Ex. F, Section 39.4(a).

18.   <u>Admitted</u>.

19.   <u>Admitted</u>.

20.   <u>Admitted</u>.

21.   <u>Denied</u>.   The materials cited do not support the alleged fact.   Ex. F, Section 89.3(b) states "Whenever a member violates such House Rules adopted by the Aerie which provide a disciplinary penalty of suspension not to exceed ninety (90) calendar days from buffet and social room privileges and Eagle functions and activities for conduct unbecoming an Eagle at the club premises or Aerie functions at Aerie or other property, the Board may enforce such penalty."   Ex. F does not provide that "A member of a local aerie may be suspended for no longer than ninety (90) days . . . ." Further, relative to Plaintiff's employment, Local Chapter #200's charter was suspended; Vince Kinman was Agent of Grand Aerie and Agent of #200, was vested with the power of the Trustees, including but not limited to, the authority to act on behalf of the Aerie in all legal and governmental matters. Ex. F, Section 39.4(a).

Plaintiff objects to the citation to Ex. C at ¶ 12, on the basis that Ex. F is a document which speaks for itself.

22.   <u>Disputed in part.</u>   Plaintiff admits that Ex. F, Section 89.3(g) states that "A suspension from buffet and social room privileges and Eagle functions and activities shall not otherwise deprive a member, during the period of suspension, of the right to retain or be a candidate for office, to attend meetings . . . ."   However, relative to Plaintiff's employment, Local Chapter #200's charter was suspended; Vince Kinman was Agent of Grand Aerie and Agent of #200, was vested with the power of the Trustees, including but not limited to, the authority to act on behalf of the Aerie in all legal and governmental matters. Ex. F, Section 39.4(a). Kinman could have precluded Jeff Clark from attending monthly membership meetings during the period of his

suspension. Ex. F, Section 89.3(g) provides "The Trustees may elect to take direct disciplinary action for violation of House Rules, or if in their judgment, the nature of such violation warrants more drastic punishment than they are authorized to impose, they may file a written Complaint with the worthy president against the offender and have same referred to and determined by the Local Trial Committee."

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Admitted in part.    Plaintiff admits that Grand Aerie sent field Service Manager Vince Kinman to Fremont, Nebraska, to Local Chapter #200 on May 5, 2009, but alleges that Vince Kinman was appointed as Agent to #200 on March 16, 2009.  Ex. 12.

27.    Admitted.

28.    Admitted in part.  Plaintiff admits that she contacted Vince Kinman in May 2009, that she complained she was being subjected to harassment by Local Chapter 200 Trustee Jeff Clark, and that she shared with Kinman three incidents of harassment by Clark.  Plaintiff disputes that she "allegedly" contacted Vince Kinman, as this fact is conclusively established by Vince Kinman's own testimony, as cited by Grand Aerie at Ex. C, ¶17.

29.    Admitted in part.  Plaintiff admits that at the time she called Vince Kinman, she had Kinman's business card and that the card identified Kinman as Field Service Manager for Grand Aerie.  Plaintiff was not aware Kinman was employed by Grand Aerie. Ex. 9, ¶ 9.

18

30.     <u>Admitted in part</u>.    Plaintiff admits that Kinman suspended Clark from membership for ninety (90) days and removed him from the office of Trustee on June 3, 2010. Kinman did not do so "in response to Plaintiff's complaint," but did so in response to a telephone call from Cheri Bollig. Ex. 4, 63:15-64:16.

31.     <u>Disputed</u>. Local Chapter #200's charter was suspended; Vince Kinman was Agent of Grand Aerie and Agent of #200, was vested with the power of the Trustees, including but not limited to, the authority to act on behalf of the Aerie in all legal and governmental matters, including the power to revoke Clark's membership. Ex. F, Section 39.4(a); Ex. 13.

32.     <u>Admitted</u>.  However, Plaintiff and the #200 Trustees believed Kinman was "in charge" of local chapter #200. <mark>(other depos)</mark>

33.     <u>Admitted</u>.

34.     <u>Admitted</u>.

35.     <u>Admitted</u>.

36.     <u>Admitted</u>.

37.     <u>Admitted</u>.

38.     <u>Admitted in part</u>.   Plaintiff disputes that she quit her employment with Local Chapter 200.  She was terminated when #200 stopped putting her on the work schedule.  Ex. 3, 182:6-23.

39.     <u>Admitted in part</u>.  Plaintiff was terminated when #200 stopped putting her on the work schedule.  Ex. 3, 182:6-23.

40.     <u>Admitted in part</u>.  Plaintiff was terminated when #200 stopped putting her on the work schedule.  Ex. 3, 182:6-23.

41.   <u>Disputed</u>.   Plaintiff admits that Kinman was not directly involved in her separation from employment from #200, but as #200's Agent, Kinman was responsible for overseeing the actions of #200 employees.  Ex. F, Section 39.4(a); Ex. 13.

42.   <u>Disputed in part</u>.   Plaintiff agrees that she filed a "Charge of Discrimination" with the EEOC on December 18, 2009 alleging discrimination based on sex, age, and retaliation. Plaintiff denies that she filed her charge "against Local Chapter 200."  Plaintiff clearly stated in Ex. K that she is employed by "Fraternal Order of Eagles" in Grove City, Ohio and identifies the "District Level, Vince Kinman, Field Service Manager." Ex. K.

43.   <u>Disputed</u>.   Plaintiff agrees that she provided the EEOC Kinman's contact information, but Plaintiff was not aware Kinman was employed by Grand Aerie and was not aware that Grand Aerie and Local Chapter 200 were separate entities.  Ex. 9, ¶ 9. Plaintiff informed the EEOC that Kinman was the "Field Service Manager" for the Fraternal Order of Eagles.  (Ex. K)  After speaking with Vince Kinman on the phone; talking with Vince Kinman in person, and being directed to contact Kinman by #200 Trustees, Plaintiff believed Vince Kinman was "in charge" at Local Chapter #200.  Ex. 9, ¶ 9.  Plaintiff did not understand the relationship between Fraternal Order of Eagles, Chapter #200 and Grand Aerie of the Fraternal Order of Eagles.  She believed they were both part of the same organization and believed that Vince Kinman was in charge of what went on at #200 in light of the fact that he seemed to be making decisions about what was going on at #200 in Fremont, Nebraska.  She was not aware of Kinman's employer. Ex. 9, ¶ 9.

44.   <u>Admitted</u>.  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 24" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as an expert witness in this matter.

45.   <u>Admitted in part</u>.  Plaintiff denies that the perfected charge was against "Local Chapter 200."       Plaintiff clearly stated in Ex. K that she is employed by "Fraternal Order of Eagles" in Grove City, Ohio and identifies the "District Level, Vince Kinman, Field Service Manager." Ex. K.  Ex. M lists Plaintiff's "Employer" as "Fraternal Order of Eagles."

46.   <u>Disputed</u>.   Plaintiff clearly stated in Ex. K that she is employed by "Fraternal Order of Eagles" in Grove City, Ohio and identifies the "District Level, Vince Kinman, Field Service Manager." Ex. K.  Ex. M lists Plaintiff's "Employer" as "Fraternal Order of Eagles."   Ex. K does not give the charging party the opportunity to name a "Respondent."

47.   <u>Admitted</u>.  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 26" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as an expert witness in this matter.  See, Ex. 18, 19.

48.   <u>Admitted</u>.

49.   <u>Disputed in part.</u>   Grand Aerie sent the EEOC Exhibit P, but Exhibit P does not state that Grand Aerie is not Plaintiff's employer.

50.   <u>Disputed</u>. See, Ex. 19.

51.    <u>Disputed</u>.  Plaintiff objects to the citation of materials found at "Index Ex. B at ¶ 28" and objects to Exhibit B in its entirety, on the basis that Grand Aerie did not disclose Creighton Thurman in its Rule 26(a) disclosures and did not disclose Thurman as an expert witness in this matter.

52.    <u>Admitted</u>.  Plaintiff admits that the file produced by the EEOC does not contain a similar letter.

53.    <u>Admitted</u>.

54.    <u>Admitted</u>.  Plaintiff admits that the file produced by the EEOC does not contain a similar letter.

55.    <u>Admitted</u>.

56.    Plaintiff admits that the file produced by the EEOC does not contain a letter similar to Ex. S and addressed to Grand Aerie.

57.    <u>Admitted</u>.

58.    <u>Disputed</u>.   Plaintiff agrees that her Amended Complaint added Grand Aerie as a Defendant, but disputes that it asserted "completely new" claims against Grand Aerie.  Grand Aerie was involved in the EEOC charge and investigation and was kept apprised of the litigation such that the claims in the Amended Complaint were not "new" to Grand Aerie.  Ex. 4-A, 14, 15, 16, 17, 18, 19, 20, 22.

59.    <u>Disputed</u>.  Paragraph 59 does not contain a statement of material fact. Plaintiff admits that she dismissed her second and third causes of action but disputes that she did so "after being advised by undersigned counsel that the claim was untimely."  The basis for the dismissal is not relevant or material.

60.    <u>Admitted</u>.

61.   <u>Admitted</u>.

62.   <u>Admitted in part</u>.  Plaintiff admits that her claims are based in part upon four alleged incidents of sexual harassment by Jeff Clark.  Plaintiff's claim is also based upon additional evidence, as set forth in her Amended Complaint and this Brief.

63.   <u>Disputed</u>.   Plaintiff admits that her Complaint did not allege vicarious liability on the part of Grand Aerie and admits that her Amended Complaint alleges Grand Aerie is vicariously liable for the acts of Kinman.   Plaintiff disputes that she alleged Grand Aerie's vicarious liability "for the first time" in her Amended Complaint, as Grand Aerie was involved in the EEOC charge and investigation; was kept apprised of the litigation such that the claims in the Amended Complaint were not "new" to Grand Aerie; and Kinman is Grand Aerie's employee and agent.  Ex. 4-A, 14, 15, 16, 17, 18, 19, 20, 22.

64.   <u>Admitted</u>.

65.   <u>Disputed</u>.  Grand Aerie did not depose Kinman; Plaintiff deposed Kinman. Grand Aerie's statements in paragraph 65 are argumentative as to which details are "important."   Deposed witnesses remembered relevant details, as evidenced by their deposition testimony, cited in Plaintiff's Statement of Material Facts.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Gage v. HSM Elec. Prot. Servs., Inc.,* 655 F.3d 821, 825 (8th Cir.2011)(citing Fed.R.Civ.P. 56(c)). The court will view "all facts in the light most favorable to the non-moving party and mak[e] all

reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.,* 655 F.3d 811, 819 (8th Cir. 2011).

The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In considering a motion for summary judgment, the district court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter, *id.* at 249, 106 S.Ct. 2505, but instead should give all reasonable inferences to the non-moving party.  To survive summary judgment, Plaintiff need only submit "'sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact.' " *Austin v. Minnesota Mining & Mfg. Co.,* 193 F.3d 992, 994 (8th Cir.1999), (quoting *Hase v. Missouri Div. of Employment Sec.,* 972 F.2d 893, 895 (8th Cir.1992)).  Summary judgment is inappropriate where "reasonable minds could differ as to the import of the evidence."  *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.  *Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 728 (8th Cir. 2000).

Here, the record, taken as a whole, contains sufficient evidence supporting a material factual dispute that would require resolution by the jury.  The evidence could lead a rational trier of fact to find for Plaintiff Debra Sorensen, and thus demonstrates the existence of a genuine issue of material fact for trial. Therefore, Grand Aerie's motion for summary judgment must be denied.

## **ARGUMENT**

Plaintiff's Amended Complaint alleges generally that Plaintiff is a member of a protected class and was subjected to unwelcome, unwanted, and illegal sexual harassment by her superiors in the form of sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature while employed by the Defendants.  The Amended Complaint alleges theories of recovery based upon Title VII of the American Civil Rights Act of 1964 (Title VII) and specifically alleges gender discrimination and sexual harassment resulting in a hostile work environment. (Docket 42)  Plaintiff's Amended Complaint further alleges that #200 and Grand Aerie are "vicariously liable for the discriminatory actions of their supervisory personnel, including Kinman, Clark, Broulliette, and Matura." (Docket 42, ¶ 42)

Plaintiff dismissed her NFEPA gender discrimination claim and Constructive Discharge claim by way of Stipulation for Dismissal dated May 22, 2013. Docket 64.

## I.   PLAINTIFF'S CLAIMS ARE NOT TIME BARRED AS THE AMENDED COMPLAINT RELATES BACK TO THE DATE OF THE ORIGINAL COPMLAINT PURSUANT TO F.R.C.P. 15(c)(1).

Grand Aerie admits that Plaintiff filed her original Complaint within 90 days of receiving her "right to sue" letter from the EEOC.  Grand Aerie's Brief at 13.  Grand Aerie ("GA") alleges that because Plaintiff did not name GA as a defendant in her original Complaint Docket 1, her Amended Complaint naming GA as a defendant was untimely and is barred. It should be noted that this issue is closely related to GA's arguments regarding exhausting administrative remedies, which Plaintiff addresses in Section 3 of this Brief. However, because (1) The Amended Complaint "changes the party or the naming of the party against whom a claim is asserted;" (2) Grand Aerie received such notice of the

action that it will not be prejudiced in defending on the merits and (3) Grand Aerie knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.   Therefore, the Amended Complaint relates back to the date of the original Complaint.

This Court entered an Order (Docket 41) on September 6, 2012 granting Plaintiff leave to file an Amended Complaint, finding that Plaintiff had shown good cause for allowing the amendment.   Specifically, the Court found that the proposed amendment (1) related to the current claims and (2) would not significantly delay the case or impact discovery requirements. (Docket 41) Rule 15(a) of the Federal Rules of Civil Procedure provides that the Court should "freely give leave" to amend a pleading "when justice so requires." It is well established that courts should liberally exercise their discretion to allow amendments of pleadings in the absence of undue prejudice, undue delay, or bad faith. *See, e.g., Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001). Plaintiff's Amended Complaint (Docket 42) alleges that it "relates back to the date of the original Complaint."   F.R.C.P. 15(c) provides:

(c) RELATION BACK OF AMENDMENTS.

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

   (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

   (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Here, subsection (C)(i) applies, as Plaintiff's Amended Complaint "changes the party or the naming of the party against whom a claim is asserted" by adding "Grand Aerie of the Fraternal Order of Eagles" as a Defendant.  For the Amended Complaint to relate back to the filing of the original complaint, Rule 15(c)(1)(B) must be satisfied as well as subparts (C)(i) and (C)(ii).

**A.     Plaintiff's Amended Complaint "changes the party or the naming of the party against whom a claim is asserted" by adding "Grand Aerie of the Fraternal Order of Eagles" as a Defendant.**

Grand Aerie argues that Rule 15(c)(1)(C) does not apply because Plaintiff *added* Grand Aerie as a party, as opposed to "changing" a party.  However, authoritative precedent does not support this conclusion.

Federal Rule of Civil Procedure 15 was amended in 1991 and revised paragraph (C).  A reading of the Notes of Advisory Committee on Rules – 1991 Amendment Comments to F.R.C.P. 15 makes clear that paragraph (C) was "revised to change the result in *Schiavone v. Fortune,* 106 S.Ct. 2379 (1986), where it was held that when amended complaints adequately named an additional defendant, the amendments did not relate back, under Federal Rule of Civil Procedure 15(c), to the filing of the original complaints because it had not been shown that the additional defendant received notice of the institution of the actions within the period provided by state law.  See, *Schiavone, supra*.  Grand Aerie cites *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952 (2013), a recent

27

Nebraska Supreme Court case which addresses the "change vs. add" issue with respect to Rule 15(c)(1)(C).  As an initial matter, the *Bixler* case is not authoritative in this Court. The *Bixler* Court engaged in a lengthy review of Federal case law and concluded "The federal courts are seemingly split on whether an amendment adding a new defendant, rather than substituting a new defendant, may relate back to the original pleading under rule 15(c)(1)(C)."  *Bixler*, 285 Neb. at 964.

To the extent this Court has not addressed the "change vs. add" language, Plaintiff urges this Court to adopt the reasoning adopted by the Fourth Circuit, which has held that adding a Defendant by filing an Amended Complaint "changes" the party the Plaintiff is suing for purposes of Rule15(c) such that the Amended Complaint relates back.  See, *Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007).  The *Goodman* Court also engaged in a discussion of Rule 15(c).  The District Court in Goodman had denied relation back under Rule 15(c), ruling that (1) the amended complaint did not <u>change</u> the party or the naming of the party Defendant, but rather *added* a Defendant; (2) Plaintiff "was fully aware of [the newly proposed Defendant] and its correct name; and (3) there was no mistake as to the existence or name of the newly proposed defendant.   *Goodman*, 494 F.3d at 468.   The Plaintiff argued that by adding a defendant, he "changed" the party he was suing, because "an *addition* to something is generally regarded as a *change* to that thing."   *Id*.   The newly-added Defendant in *Goodman* also argued that  "To allow the correction of a mistake to relate back, the mistake . . . must be a mistake of corporate identity or a misnomer, not one based on a lack of knowledge or poor strategy."  Id. at 469.

28

In siding with the Plaintiff, the *Goodman* Court first explained the purpose of the

Rule:

> In light of these policies, Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served. *See* 3 James Wm. Moore, et al., *Moore's Federal Practice* § 15.19[3][a] (3d ed. 1997) ("The purpose of Rule 15(c) is to provide the opportunity for a claim to be tried on its merits, rather than being dismissed on procedural technicalities, when the policy behind the statute of limitations has been addressed"). And that is accomplished in Rule 15(c) by requiring that a new party have had adequate notice within the limitations period and by assuring that the new party not be prejudiced by the passage of time between the original pleading and the amended pleading.

*Goodman*, 494 F.3d 458, 467 (4th Cir. 2007).  The Court disagreed with the Defendant's

argument about the "type" of mistake required by the rule, explaining:

> The interpretation of Rule 15(c) made by the district court and now urged by the Praxair defendants focuses unnecessarily on the type of mistake without addressing the notice and prejudice to the new party.

> Rule 15 implements the notions that a plaintiff may amend a pleading for whatever reason and that his amendment should be freely allowed. Consistent with this policy, Rule 15(c)(3) articulates an instance when an amendment relates back, referring simply to when an amendment "changes the party or the naming of the party" *for whatever reason*. The Rule does not concern itself with the amending party's particular state of mind except insofar as he made a mistake; it presumes that the amending party can make the amendment, although it does constrain substantially the type of amendment that may relate back — one that changes a party or the naming of a party with respect to a claim already asserted. The Rule's description of when such an amendment relates back to the original pleading focuses on the *notice to the new party* and *the effect on the new party* that the amendment will have. *See* Fed.R.Civ.P. 15(c)(3)(A)-(B). These core requirements preserve for the new party the protections of a statute of limitations. They assure that the new party had adequate notice *within the limitations period* and was not prejudiced by being added to the litigation.

Id. at 469-470.   The Court concluded:

> Moreover, we can discern no policy that would be served by the Praxair defendants' restrictive reading of "changes," which would force the amending party to drop a defendant for each defendant he adds. Praxair, Inc., was placed on notice within the limitations period of the claims relating to the transactions alleged in the original complaint, and no unfairness to it resulted from leaving it in as a defendant in the amended complaint . . . In the present circumstances, we conclude that the amended complaint "change[d] the party or the naming of the party against whom a claim is asserted," as required by Rule 15(c)(3).

*Id*. at 469.   This Court has addressed the current language of Rule 15(c)(1)(C) (explained in the next Section, below), but does not appear to have directly addressed the "add/change" argument.   See, *Farr v. Designer Phosphate and Premix Intern, Inc.*[1], 804 F.Supp 1190 (D.Neb.1992).   As the Goodman Court noted, the language of Rule 15(c)(1)(C) on its face applies to situations when an amendment "changes the party or the naming of the party against whom a claim is asserted . . . ."   It does not mandate they type of change required for the rule to apply; it doesn't concern itself with the amending party's state of mind except that she made a mistake; and it presumes that the amendment can be made, if the remaining requirements of the Rule are met. Clearly, the Rule's description of when an amendment relates back focuses on the *notice to the new party* and *the effect on the new party* that the amendment will have.   Similar to the newly-added Defendant in *Goodman*, as explained further below, Grand Aerie was placed on notice within the limitations period of the claims alleged in the original Complaint, assisted #200 in responding to the Complaint, and was not prejudiced by being added to the litigation.   Further, at the time the initial Complaint was filed, Vince Kinman acted as Agent for #200 and continued to do so until November

---

[1] Judge Kopf's ruling notes, with respect to the then-existing version of Rule 15(c)(3) "This portion of the Rule apparently pertains to situations where a party was not named at all or where there was a misnomer of a party." *Farr,* 804 F.Supp. at 1196 (Footnote 7) (D.Neb.1992).

2011, at which time a new Agent assumed the role Ex. 4, 90:18-24. Therefore, Grand Aerie's argument is without merit and Rule 15(c)(1)(C) does not prevent relation back of Plaintiff's claims against Grand Aerie to the date the Complaint was filed, July 26, 2011.

**B.      Grand Aerie received such notice of the action that it will not be prejudiced in defending on the merits and knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.**

The case is not one involving an amendment which would bring a Defendant into the case for the first time and might prejudice its right to rely on the statute of limitations. Rather, Grand Aerie participated in the EEOC proceedings; acted as #200's agent during the EEOC proceedings; was aware of the lawsuit filed by Plaintiff, and knew or should have known that the action would have been brought against it, but for a mistake concerning the Fraternal Order of Eagles' identity.  Therefore, the Amended Complaint relates back to the filing of the original complaint.

In *Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000), a Plaintiff filed a Title VII action against a person who she believed to be her former employer, alleging sexual harassment. The Defendant "answered the complaint, waited four months, and moved for summary judgment on the ground that Roberts's employer was Midsouth Food Vending Service, Inc., not Michaels." *Id*. at 776.  The district court denied Plaintiff's motion for leave to amend the complaint and dismissed the complaint with prejudice, even though the Title VII statute of limitations had expired. *Id*.  The Eight Circuit reversed, relying upon the then-existing version of Rule 15(c). The basis for the Court's decision was (1) Plaintiff promptly moved to amend to add the proper defendant after

she was aware of the problem; (2) Plaintiff asserted the same claim in her amended complaint; (3) the later-added Defendant received actual notice of the lawsuit within the time prescribed by Rule 4(m); and (4) by virtue of participating in the EEOC investigation before suit both the initial and the later-added Defendants "knew ... that, but for a mistake concerning the identity of the proper party, the action would have been brought against" the corporation. Rule 15(c)(3)(B).   *Roberts,* 219 F.3d at 779.   The Court also noted that the Defendant had "created the confusion" as to his business name; that he "compounded" the confusion during the EEOC proceedings by using the wrong corporate name; and "prolonged" the confusion in its Answer.   *Id*.   Notably, the Court did not engage in any discussion of the phrase "changes the party or naming of the party" in Rule 15(c)(1)(C).

This Court has ruled in conformity with the holding in *Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000) in *Kennedy v. Cooperative Producers*, 2006 WL 3408112 (Oct. 31, 2006) (Plaintiff's Amended Complaint related back to the filing of the original Complaint and service upon the initial defendant constituted service upon the later-added Defendant when Plaintiff timely moved to amend; Plaintiff asserted the same claim in the amended complaint; the later-added Defendant had notice of the lawsuit; and the later-added Defendant participated in NEOC and EEOC investigations); *Farr v. Designer Phosphate and Premix Intern, Inc*., 804 F.Supp 1190 (D.Neb.1992) (Provided that the amended pleading alleges a matter arising out of the same conduct, transaction, or occurrence as that set forth in the original pleading, if the original pleading has performed the function of providing notice of the claim asserted in the new pleading, then the amendment will be allowed to relate back to prevent the running of

the limitations period. 6A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1497 at 85–86 (1990). *See e.g., Fuller v. Marx,* 724 F.2d 717, 720 (8th Cir.1984) ("Rule 15(c) is designed to allow the addition of new claims only if there is no unfair surprise or prejudice."); *Figueroa v. Tyson Foods, Inc.*, 2007 WL 2572441 (D. Neb. 2007) (Plaintiff in employment discrimination action failed to serve proper defendant within time prescribed by Rule 4(m); by reason of its prior participation in the EEOC proceeding, subsequently added defendant knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it; Defendant would not be prejudiced in defending on the merits; Plaintiff was allowed to amend her complaint well after statute of limitations had passed).

In *Figueroa*, the Plaintiff/employee sued "Tyson Foods, Inc."   Tyson objected to the sufficiency of process, arguing that Plaintiff was really employed by "Tyson Fresh Meats, Inc."   The record showed that Tyson Foods was involved in proceedings before the EEOC in the same case. In finding that Tyson Foods "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it, the Court explained:

> When a defendant "has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, a liberal rule should be applied. *Goodman v. Praxair, Inc.,* 494 F.3d 458, ——, 2007 WL 2121724, *13–14 (4th Cir. July 25, 2007)(noting identity of interests between parent and wholly-owned subsidiary corporations and concluding that "when a plaintiff alleges a comprehensible claim against one of a group of closely related and functioning business entities or corporations, the other entities in that group, barring a contrary showing, will be charged with knowledge under Rule 15(c)(3)(B) of the entity properly answerable to the claim).

*Figueroa v. Tyson Foods, Inc*. 2007 WL 2572441, 3 (D.Neb.2007).  In this case, #200

and Grand Aerie have a relationship akin to parent and subsidiary corporations.  (See,

Ex. D)  Grand Aerie is a 501(c)(8) fraternal beneficiary society for tax purposes.  Ex. D.

To qualify for 501(c)(8) status, Grand Aerie must (1) have a fraternal purpose, (2)

operate under the lodge system; and (3) must provide for the payment of life, sick,

accident, or other benefits.   See,  http://www.irs.gov/pub/irs-tege/eotopicf04.pdf.   The

Internal Revenue Service has explained:

> Reg. 1.501(c)(8)-1 provides that a fraternal beneficiary society is exempt
> from tax only if it is operated under the "lodge system" or for the exclusive
> benefit of the members so operating. An organization is "operating under
> the lodge system" if it is carrying out its activities under a form of
> organization that comprises local branches called lodges, chapters, and
> the like. The local branches must be chartered by a parent organization
> and largely self-governing.
>
> The term "operating under the lodge system" implies, at a minimum, two
> active entities:
>
> > (1) A parent; and
> >
> > (2) A subordinate (referred to as a "lodge.")

*Id*.  Here, the "Fraternal Order of Eagles" is operating under a "lodge system."  The local

Aeries are chartered by Grand Aerie, who is the "parent organization."  Grand Aerie is

the parent; #200 is the subordinate.   At a minimum, they are "closely related and

functioning business entities or corporations" such that Grand Aerie should be charged

with knowledge under Rule 15(c)(3)(B) of the entity properly answerable to the claim.

The Agency relationship between the two entities also mandates this result.

   In this case, similar to that in *Kennedy v. Cooperative Producers, Inc., supra*,

after learning of the agency relationship, Plaintiff amended the Complaint to add an

34

additional defendant, "Grand Aerie of the Fraternal Order of Eagles" and requested that the Amended Complaint relate back to the original Complaint.   Plaintiff promptly moved to amend the complaint after it was learned through discovery that Grand Aerie participated in the EEOC process and that Grand Aerie, by way of its agent/employee Vince Kinman, acted as Agent for #200 during the time the sexual harassment in this case took place, during the time the EEOC investigated Plaintiff's charge, and continued to do so until November 2011, approximately 120 days after the original complaint was filed.  Filing 39, Ex. 4, 90:15-19.  The "mistake" in this case is that (1) #200 and Grand Aerie are "branches of the same tree" in the eyes of every person deposed in this case save for Vince Kinman and (2) Plaintiff was not aware and could not have been aware of the Agency relationship between #200 and Grand Aerie until discovery was conducted, when portions of Ex. F were produced by #200.

Grand Aerie argues that Plaintiff Debra Sorensen "was aware of the role and status of Kinman and his relationship to Grand Aerie during her employment and when she filed her Charge.  (Brief at 20) Plaintiff may have understood that Grand Aerie was physically located outside of Nebraska.   However, the facts cited by Grand Aerie to support this conclusion evidence the confusion that exists regarding the relationship between #200 and Grand Aerie.  Grand Aerie argues that Plaintiff received a copy of Kinman's business card identifying his position at Grand Aerie.  (UF 29)  However, Kinman's business card does not contain the words "Grand Aerie" anywhere on its face.  Rather, it identifies Kinman as "Field Service Manager" for "Fraternal Order of Eagles" and contains the same font and Eagle emblem as used by Local Chapter #200. Plaintiff received a letter informing her of Clark's suspension and removal from Kinman on

Grand Aerie letterhead.  (UF 32) Although Plaintiff's physical employment location was in Fremont, Nebraska, she was directed to Kinman for help with her sexual harassment complaints and received correspondence from him regarding those complaints.  These facts reinforced Plaintiff's belief that Grand Aerie was either in charge of #200 or they were one in the same entity.  Clearly directives were given from the top (Grand Aerie) with respect to employment decisions at #200.  Plaintiff Debra Sorensen described the relationship between #200 and Grand Aerie as follows:

> Q:    Please explain your understanding of the difference between Local Chapter 200 and Grand Aerie.
>
> A:    Well, what I believe is, my though anyway, the Local 200 is our Eagles here in Fremont . . . the Grand Aerie is who oversees.  They are the top.  They're, they're the ones that are in control of all the Eagles.
>
> Q:    When you say "oversees," oversees who?
>
> A:    All the Eagles.  All the Eagles all over the nation.
>
> Q:    When you say "ones in control," what do you mean by that??
>
> A:    The Grand Aerie are the top.  They're the top people.  They are – I think they go around and check and – all the Eagles pay – but its not called dues.  I'm not for sure what – to these every so much – I don't know if it's a quarter or a year, and then they have field service managers.

Ex. 3, 80:24-81:17.  Mr. Mike Saxton, bar manager and Plaintiff's supervisor at the time the sexual harassment took place, described Grand Aerie's role with respect to #200 as follows:

36

A:      The way – my kind of interpretation of it is they're basically kind of like the head of the corporation and they're in charge of all the Eagles Clubs, from my – what my understanding is.  They're in charge of all the Eagles Clubs, and each individual club as its own – or each city or whatever has its own chapter which in turn reports to the Grand Aerie.  Ex. 5, 7:11-20.

Q:      Tell me about your contact with Mr. Kinman, how did that come about?

A:      The charter at this particular Aerie got suspended from the Grand, I don't exactly know what that means, but that means basically, from what I understand, the Grand Aerie took over this particular location and started, I guess, essentially micromanaging the business, so to speak. Ex. 5, 9:19-10:1.

Paul Mittura was a Trustee at #200 during the time Plaintiff worked there.  He testified, with respect to the Grand Aerie, "they oversee all of the clubs, basically."  Ex. 7, 12:13-14.  Scott Mittura, Secretary at #200 during the time of Plaintiff's employment, described Grand Aerie as "It's kind of like the Eagles' boss, I guess, they tell you what you can do and what you can't do, they give you the bylaws, and that's all I know of it as."  Ex. 8, 11:23-12:4.  Jeff Clark, Trustee at #200 and Plaintiff's supervisor at the time he sexually harassed Plaintiff, testified "The Grand Aerie is – they're – I don't know really how to define them, but they're a -- they are – I don't know, I'm drawing a blank today. . . The Grand Aerie are the ones – they are – that's who makes the overall rules and sets the standards for the Eagles Club.  Ex. 6, 49:16-50:6.

Neither Plaintiff nor any witness deposed in this case was aware of the alleged "status and roles of both Local Chapter 200 and Grand Aerie," as Grand Aerie argues. All witnesses deposed by Plaintiff knew that #200 was the name of the local Eagles chapter, but all believed Grand Aerie was "in charge" of the local chapter and was part of the same organization.  Grand Aerie cannot seriously argue that Plaintiff was aware or should have been aware of the nature of Grand Aerie's business entity status prior to filing the original Complaint.  Further, Plaintiff, a non-member of the Eagles Club, could not have known of the precise Agency relationship between #200 and Grand Aerie, which existed at the time the sexual harassment occurred and continues to date.  The "substantial identity" between #200 and Grand Aerie is further discussed in Section II, below.   Similar to the Defendant in *Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000), supra, Grand Aerie created the confusion surrounding its name and role in this case by structuring the Fraternal Order of Eagles organization the way that it did and compounded the confusion by participating in the EEOC proceedings and advising the EEOC of its role as Agent for Local Chapter #200.   Grand Aerie participated in the EEOC proceedings; acted as #200's agent during the EEOC proceedings; was aware of the lawsuit filed by Plaintiff, and knew or should have known that the action would have been brought against it, but for a mistake concerning the Fraternal Order of Eagles' identity.   Therefore, the Amended Complaint relates back to the filing of the original complaint and summary judgment is precluded.

## II.   PLAINTIFF EXHAUSTED HER ADMINISTRATIVE REMEDIES AGAINST GRAND AERIE BEFORE FILING SUIT.

Grand Aerie argues that Plaintiff's claims against it should fail because Plaintiff failed to exhaust administrative remedies against Grand Aerie before filing her Amended Complaint.   However, as (1) Plaintiff named her Employer as "Fraternal Order of Eagles" on the EEOC Charge; (2) Grand Aerie had actual notice and opportunity to and did participate in the EEOC proceedings; and (3) There is sufficient identity of interest between Grand Aerie and #200 such that notice to #200 should be considered notice to Grand Aerie; GA's argument is without merit and summary judgment is precluded.

> ### A.   Grand Aerie had actual notice and participated in the EEOC procedure.

Here, Plaintiff's Charge names her "Employer" as "Fraternal Order of Eagles," with an address in Fremont, Nebraska. (Ex. M)  However, Grand Aerie was notified and participated in the defense of Plaintiff's EEOC charge, the investigation relative to such charge, and the defense of the Local Chapter in this lawsuit such that Grand Aerie's argument fails.   Plaintiff acknowledges that generally, a plaintiff must have filed a charge of discrimination with the EEOC against a party prior to bringing a civil action under Title VII. *Sedlacek v. Hach,* 752 F.2d 333, 336 (8th Cir. 1985). "[T]he purpose of the filing requirement is to give notice to the employer and to give the employer an opportunity to voluntarily comply with Title VII." *Greenwood v. Ross,* 778 F.2d 448, 451 (8th Cir.1985). The Eighth Circuit, however, has long recognized certain exceptions to the general rule in order to avoid frustration of the purpose of Title VII by not requiring unnecessarily strict compliance with the statutory procedure in filing a charge of discrimination.   *Sedlacek,* 752 F.2d at 336, *Greenwood,* 778 F.2d at 451. Thus, "omission of a party's name from the EEOC charge does not automatically mandate

dismissal of a subsequent action under Title VII." *Greenwood,* 778 F.2d at 451.

This Court stated in *Payne v. Contractor Labor, Local 114,0* 2007 WL 1362720, 3 (D.Neb.2007) that the exceptions recognized by the Eighth Circuit are (1) when the party not named in the EEOC charge had adequate notice and opportunity to participate in the EEOC procedure and (2) when there is a substantial identity between the named party and the unnamed party. *Sedlacek,* 72 F.2d at 336. The Eighth Circuit has concluded that when there is substantial identity between the parties, notice to one can be considered notice to the other. *Id;* see also *Greenwood v. Ross,* 778 F.2d 448, 450–51 (8th Cir.1985) ("A suit is not barred 'where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation;' quoting *Romero v. Union Pac. R.R.,* 615 F.2d 1303, 1311 (10th Cir.1980)); *Eggleston v. Chicago Journeymen Plumbers Local Union No.* 657 F.2d 890, 907 (7th Cir.1981) ("if a party has a close relationship with a named respondent ... and has actual notice of the EEOC charge [that party] 'should not be heard to cry "foul" when later made a defendant' " (citations omitted)).

Here, Grand Aerie should not be heard to cry "foul" when it was made a Defendant in the Amended Complaint.  Plaintiff did not include the phrase "Grand Aerie" in the "Employer" box on the Charge; however, she did name "Fraternal Order of Eagles" in the "Employer" box. (Ex. M)  Similar to the later-named Defendant in *Payne*, Grand Aerie had ample notice of the EEOC complaint and the charges against #200 (and thus Grand Aerie, as argued elsewhere).  In Plaintiff's first correspondence with the EEOC, she identifies the relevant parties as follows:

Employee:
Debra Sorensen
1655 North C Street
Fremont, NE 68025
402-727-5658

Employer:
Fraternal Order of Eagles
1623 Gateway Circle S.
Grove City, OH 43123
614-883-2201

Local Chapter 200
649 North Main Street
Fremont, NE 68025
402-721-0829

Individuals involved/responsible through their associations with the
Fraternal Order of Eagles, Fremont Nebraska: Jeff Clark, trustee, Local Level - Scott
VonSeggern  Current "Trustee"
in charge at Fremont Club
District Level - Vince Kinman, Field Service Manager

See, Ex. K.  Further, the EEOC's "Charge Detail Inquiry" provides:

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Charge Detail Inquiry

RESPONDENT CONTACT

Respondent Contact Information
  Terry Mason - Asst/Grand Worthy President
 FRATERNAL ORDER OF EAGLES                        Vince Kinman
  1623 Gateway Circle S
  Grove City, OH    43123          Country: USA
Respondent Contact (Primary) - Local
— Mark Poole - President
  FRATERNAL ORDER OF THE EAGLES
  1655 North C Steet
  Fremont, NE   68025          Country: USA        Phone: (402) 721-9946
Respondent Legal Representative
  MR Travis Bennington - Attorney
  1152 N. D Street
  Fremont, NE   68025          Country: USA        Phone: (402) 727-1171

41

See, Ex. 22.   Further, the EEOC's "Mailing Instructions" state:

**Respondent Facility**

Fraternal Order of the Eagle
Local Chapter 200
649 North Main Street
Fremont, NE 68025

402.721.0829

**Respondent Contact**

Vince Kinman
Field Service Manager
Fraternal Order of the Eagles
1623 Gateway Circle South
Grove City, OH 43123

**Respondent Attorney**

Travis Bennington
Attorney At Law
1152 N. D Street
Fremont, NE 68025

Counsel for #200 carbon-copied Vince Kinman with the position statement he sent to the EEOC on behalf of #200 and kept Kinman apprised of the status of the EEOC proceeding. Ex. 15, 16,17,18, 19, 20. Exhibit 17 establishes that Exhibit 15 was forwarded to the "Grand Aerie legal advisor."

Further, Plaintiff's allegations in the Charge (Ex. M) describe the actions of the Eagles' "Field Manager," Vince Kidman (sic).  Kinman's conduct clearly helped form the basis of the charge.  The EEOC was corresponding with Grand Aerie and Kinman relative to the charge.  In fact, the EEOC mailed the "Notice of Charge of Discrimination" to "Terry Mason" at Grand Aerie's address. Ex.  N.  Further, the EEOC requested that Grand Aerie submit a position statement with respect to Plaintiff's claims.  See, Ex. O.

Grand Aerie submitted a position statement, Ex. P, dated April 2, 2010, which is signed

by Creighton A. Thurman, "Grand Aerie Legal Advisor." The statement includes:

> The Grand Aerie does, however, provide assistance to local aeries. As in this instance, when made aware of situations within a local aerie, in an effort to assist the local aerie, the Grand Aerie assigned a field service manager to advise the local leadership. The Grand Aerie has a zero-tolerance policy regarding any so of harassment or discrimination by local aeries.

See, Ex. P. Further, Vince Kinman was interviewed by the EEOC investigator in the

course of the EEOC investigation. The EEOC file contains the following:

MEMORANDUM

TO:        File

FROM:    Jeffrey S. Jones, Investigator

DATE:    July 7, 2010

SUBJECT: Vince Kinman Interview

RE:    Sorenson/Holtorf v. Fraternal Order of the Eagles
Charge number 560-2010-00599/ 560-2010-01118

Date/time of interview: July 7, 2010/ 1458

Location/type of interview: EEOC /phone

Participants: Vince Kinman; Jeffrey S. Jones

Position currently held: Field Service Manager; his role for Nebraska is that he is the Representative for the Grand Worthy President Office; He is Nebraska's agent.

See, Ex. 4-A. In his own words, Kinman acted as #200's Agent and as Representative

for the "Grand Worthy President Office." The purpose of the filing requirement – to give

notice to the employer and to give the employer an opportunity to voluntarily comply

with Title VII – was satisfied in this case. Grand Aerie (1) had actual notice of Plaintiff's

EEOC Charge through Kinman; (2) Grand Aerie was aware of the allegations in

Plaintiff's EEOC Charge; and (3) Grand Aerie participated in the EEOC procedure, such

that Grand Aerie cannot now "cry foul" to the fact that it was made a Defendant in the Amended Complaint. Similar to the complaining party in *Payne*, Grand Aerie could have attempted to resolve the alleged discrimination in an amicable manner. Current counsel of record for #200, Mr. Travis Bennington, is listed as "Respondent Legal Representative" for "Fraternal Order of Eagles" and Vince Kinman at Grand Aerie's address. Ex. 22. Mr. Bennington telephoned Vince Kinman to let him know that Plaintiff had filed a complaint with the EEOC relative to Jeff Clark's behavior. Ex. 4, 96:1-18. Further, Grand Aerie provided a position statement to the EEOC with respect to Plaintiff's Charge. Ex. P. Further, the EEOC sent Mr. Bennington notice of its Determination and the "Right to Sue" letter. (Exs. R, S) This evidence shows that Grand Aerie had actual notice of the EEOC proceedings and had the opportunity and did participate in the EEOC procedure. It also shows that counsel for #200 was providing notice to Vince Kinman during the process. Similar to *Payne*, this Court properly allowed Plaintiff to file an Amended Complaint naming Grand Aerie as a Defendant. Therefore, the omission of the phrase "Grand Aerie" on the January 23, 2010 EEOC Charge (Ex. M) in the blank for "Employer, Labor Organization, Employment Agency . . . " does not mandate dismissal of Plaintiff's subsequent lawsuit against Grand Aerie; Grand Aerie's argument is without merit; and Summary Judgment should be denied.

   **B.    There is a substantial identity between Local Chapter #200 and Grand Aerie such that notice to #200 can be considered notice to Grand Aerie.**

Further, there is a substantial identity between #200 and Grand Aerie such that notice to

#200 can be considered notice to Grand Aerie.  The Eighth Circuit has held that when a "substantial identity" exists between the parties before the EEOC and the trial court, notice to one party can constitute notice to the other.  In *Sedlacek v. Hach*, 752 F2d 333 (8th Cir. 1985), a Title VII plaintiff filed a complaint with the EEOC against "American Storage Company."  She later filed suit against "American Storage Company,"  "Marjorie Hach and Robert Hach," and "Hach Brothers Company."   Plaintiff alleged in the Complaint that American and Hach Brothers were a "single employer" for Title VII purposes.   The Hach's and Hach Brothers Company argued that because Plaintiff's charge filed with the EEOC named only American as the discriminating party, she could not later-name Hach Brothers as a defendant in federal court.  The Eighth Circuit held that the "substantial identity" applied such that notice to American constituted notice to the Hachs' and Hach Brothers Company.  The Court reasoned:

> When the district court held that American and Hach Brothers constituted a single employer, it determined that Robert and Marjorie Hach, the two partners in American, were also the primary owners and managers of Hach Brothers. The Title VII notice requirement is satisfied if a party "sought to be included as a defendant knew or should have known that his conduct might be the subject of the inquiry at issue." *Hanshaw v. Delaware Technical & Community College,* 405 F.Supp. 292, 296 (D.Del.1975). *See also Escamilla v. Mosher Steel Co.,* 386 F.Supp. 101, 105 (S.D.Tex.1975) (through its wholly owned subsidiary, parent corporation had or should have had notice of the EEOC charges). As the two partners in American, Robert and Marjorie Hach received notice of Sedlacek's claim before the EEOC and either knew or should have known that the interrelation between American and Hach Brothers would cause the latter to be implicated as well.

*Sedlacek v. Hach*,  752 F.2d at 336.  In this case, the relationship between Grand Aerie and #200 is such that Grand Aerie either knew or should have known that the interrelation between Grand Aerie and #200 would cause Grand Aerie to be implicated as well.  There is no dispute that #200's charter was suspended in 2009.  Ex. 4, 37:24-

38:2.  Vince Kinman, an employee and Agent of Grand Aerie, was appointed to be the "Agent" for #200, due to #200's charter being suspended.  Ex. 4, 40:7-24.  The Grand Aerie promulgates the Constitution, which contains guidelines that govern the local Aeries. Ex. 4, 13:8-10.  The local aeries are supposed to abide by the Constitution.  Ex. 4, 14:9-14.  Per the Constitution,

> **Section 39.4.** (a) The Grand Worthy President shall commission an Agent to represent a suspended Aerie. The Agent is vested with all the powers of the Trustees and all other Aerie Officers and members, including but not limited to, the authority to act on behalf of the Aerie in all legal and governmental matters. The Agent shall collect all dues, and pay all debts of the Aerie, including per capita tax. The Agent shall file written reports and shall account for all funds in the manner prescribed by the Grand Worthy President.
>
> The Agent shall serve until his commission is withdrawn by the Grand Worthy President.
>
> (b) The Agent shall have the authority to remove and replace any officers of the suspended Local Aerie. Any officers so removed and not reinstated by the Agent, shall not be eligible to run for **or** be appointed to office in any Local Aerie until three (3) regular elections have passed. Any officer so removed shall have no right of appeal.

(Ex F, Section 39.4)  Per the Constitution, Kinman was vested with all the powers of the Trustees and all other #200 Aerie Officers and members, including the authority to act on behalf of the Aerie in the EEOC investigation, which is a "governmental matter."  The evidence establishes that Kinman advised the EEOC of his agent role during the investigation of Plaintiff's charge.  (Ex. Interview)  Per it's own "law", notice of Plaintiff's EEOC charge to Kinman constituted notice to Grand Aerie.  Grand Aerie knew that Kinman was acting as #200's agent and per the Charge (Ex. K), Kinman's conduct was being called into question.

Further, Plaintiff Debra Sorensen described the relationship between #200 and Grand Aerie as follows:

Q:      Please explain your understanding of the difference between Local Chapter 200 and Grand Aerie.

A:      Well, what I believe is, my though anyway, the Local 200 is our Eagles here in Fremont . . . the Grand Aerie is who oversees.  They are the top.  They're, they're the ones that are in control of all the Eagles.

Q:      When you say "oversees," oversees who?

A:      All the Eagles.  All the Eagles all over the nation.

Q:      When you say "ones in control," what do you mean by that??

A:      The Grand Aerie are the top.  They're the top people.  They are – I think they go around and check and – all the Eagles pay – but its not called dues.  I'm not for sure what – to these every so much – I don't know if it's a quarter or a year, and then they have field service managers.

Ex. 3, 80:24-81:17. The Eighth Circuit has stated "Aggrieved complainants should not be charged with the knowledge of the ofttimes intricate legal corporate relationships between closely held operating units."  *Sedlacek v. Hach,*  752 F.2d 333, 336 (8th Cir. 1985).  Here, Grand Aerie and #200 shared a "substantial identity," per it's own "Law" and to outward observers, such that Plaintiff's failure to include the phrase "Grand Aerie" in the "Employer" box on the Charge form does not deprive this Court of jurisdiction.  Kinman and Grand Aerie had notice of the EEOC charges and participated in the proceedings; therefore, Grand Aerie's argument in this regard is without merit.

III.     **GRAND AERIE IS NOT A PRIVATE MEMBERSHIP CLUB AND EVEN IF IT WERE, GRAND AERIE IS RESPONSIBLE AND LIABLE FOR KINMAN'S CONDUCT AND THE CONDUCT OF THE LOCAL #200 TRUSTEES.**

Grand Aerie argues that it is a bona fide private membership club and is exempt from claims arising under Title VII.  However, because Grand Aerie is not a "club" within the common meaning of the word, this argument fails.

Grand Aerie bears the burden of proving its exemption from Title VII.  See, *EEOC v. The Chicago Club*, 86 F.3d 1423 (7th Cir. 1996); *Quijano v. University Federal Credit Union*, 617 F.2d 129 (5th Cir. 1980).  An "employer" for Title VII purposes is generally defined as a person (which includes a range of specifically identified entities) that employs more than 15 persons, and is engaged in an industry affecting commerce.  However, specifically excluded from the definition of "employer" in § 2000e(b) are bona fide private membership clubs and other entities such as corporations wholly owned by the United States government.   42 U.S.C. § 2000e(b).   The relevant inquiries in determining whether Grand Aerie is a private membership club are (1) whether Grand Aerie is a club within the common meaning of the word; (2) whether Grand Aerie is private; and (3) whether Grand Aerie advertises or solicits for public use of its facilities.  See, *EEOC v. Chicago Club*, 86 F.3d 1423, 1433 (7th Cir. 1996).  Plaintiff does not dispute that Grand Aerie is a 501(c)(8) fraternal beneficiary society for tax purposes.  (Ex. D)  However, this fact does not make Grand Aerie a "private membership club" for purposes of Title VII.

The Fifth Circuit Court of Appeals has quoted Webster as follows, with respect to whether an entity is a "private membership club" for purposes of Title VII.  In *Quijano v.*

*University Federal Credit Union*, 617 F.2d 129 (5th Cir. 1980), the Court quoted

Webster's Third International Dictionary of the English Language:

> club — an association of persons for social and recreational purposes or for the promotion of some common object (as literature, science, political activity) usually jointly supported and meeting periodically, membership in social clubs usually being conferred by ballot and carrying the privilege of use of the club property.

The Court further explained:

> The adjectives "bona fide", "private" and "membership", included in the statute serve to indicate the more limited type of club sought to be exempted by the narrow exception in the statute. These modifiers suggest that, in order to be exempt from coverage by Title VII, an association of persons for social or recreational purposes or for the promotion of some common literary, scientific or political objective must also be legitimate (as opposed to sham), private (as opposed to public) and must require some meaningful conditions of limited membership.

*Id.* at 132.   Similarly, Black's Law Dictionary, 6th Edition, provides the following

definition:

> Club.  A voluntary, incorporated or unincorporated association of persons for common purposes of a social, literary, investment, political nature, or the like.  Association of persons for promotion of some common object, such as literature, science, politics, good fellowship, etc., especially one jointly supported and meeting periodically, and membership is usually conferred by ballot and carries privilege of exclusive use of club quarters, and word also applies to a building, apartment or room occupied by a club.

In this case, Grand Aerie is not a "club" in any sense of the word.   It is the "parent

company" for the subordinate local aeries.  Grand Aerie does not hold separate annual

conventions for Grand Aerie "members;" rather, the Grand Aerie plans and puts on

annual convention, which any Eagles member from any local aerie can attend.  Ex. 4,

20:9-19. Although they are organized on a non-profit basis, the Grand Aerie clearly

performs a business function and is not a "club" where members unite with others for

any social, civil, political, business, or other purpose.  Members of the "Fraternal Order of Eagles" meet at various aeries for such purposes, but the Grand Aerie is not a separate "club" as the term is defined above.  Grand Aerie has a sexual harassment policy, which it provided to local aeries.  Ex. 4, 76:20-22.  One would not expect a "club" in the common sense of the word to have a sexual harassment policy.  Grand Aerie "provides support as in training programs, we lay out programs for membership retention, membership to try to get them idea, we give, again, training and guidance. Ex. 4, 10:5-10.  The Grand Aerie Constitution "gives the locals what they're able to do." Ex. 4, 14-12. Grand Aerie employed approximately 50 people on March 2, 2009.  Ex. 10.  Grand Aerie attempts to distinguish itself as a separate "club" to avoid Title VII; however, the evidence does not support the conclusion that Grand Aerie is a "bona fide private membership club;" therefore, summary judgment is precluded on this basis.

## IV.  GRAND AERIE ACTED AS PLAINTIFF'S EMPLOYER DURING THE TIME AT ISSUE AND EVEN IF IT DID NOT, GRAND AERIE IS RESPONSIBLE AND LIABLE FOR KINMAN'S CONDUCT AND THE CONDUCT OF THE LOCAL #200 TRUSTEES.

For purposes of Title VII, an "employer" is, with the exception of "bona fide private membership clubs," defined as a "person engaged in an industry affecting commerce who has twenty-five or more employees." 42 U.S.C. § 2000e(b).   The Amended Complaint alleges "Defendants are "employers" within the meaning of [Title VII]."  The Amended Complaint further alleges that during the time of the sexual harassment, "Mr. Vince Kinman, Field Service Manager of the Grand Aerie, acted as an agent for Local Chapter 200 and oversaw all business operations at Local Chapter 200, including

investigating and responding to workplace harassment claims and hiring and firing of Local Chapter 200 employees."   The Amended Complaint further alleges that Grand Aerie and #200 "are vicariously liable for the discriminatory actions of their supervisory personnel, including Kinman, Clark, Broulliette, and Matura."

A direct employment relationship is not required to subject an entity to Title VII liability.  See, *Trimble v. BNSF Railway Co*., 636 F.Supp. 2d 916 (D.Neb.2009)  This Court recently addressed a similar issue in an unreported decision, *Davis v. Hugo Enterprises, LLC,* 2013 WL 2444077 (D.Neb.2013), where it reviewed Eighth Circuit case law on this issue.  The Eight Circuit held in *Brown v. Fred's Inc.,* 494 F.3d 736 (8th Cir.2007) that a parent company may be viewed as the employer of its subsidiary's employees for purposes of the Title VII numerosity requirement "if (a) the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer, or (b) the parent company is linked to the alleged discriminatory action because it controls individual employment decisions." *Id.* (internal citations and quotation marks omitted).  The Eighth Circuit clarified in *Sandoval v. Am. Bldg. Maint. Indus., Inc.,* 578 F.3d 787, 796 (8th Cir.2009) that the four factors it set forth in *Baker v. Stuart Broad. Co.,* 560 F.2d 389, 392 (8th Cir.1977) should be considered to determine "corporate dominance over a subsidiary's operations and establish affiliate liability." The *Sandoval* court found that "evidence of common ownership and management of [the parent and subsidiary]; [the parent's] involvement, pursuant to [a service agreement], in several areas of [the subsidiary's] operations; and [the parent's] public representations of centralized corporate control of labor and human resources, demonstrate [the parent] is the [plaintiff's] employer for purposes of the

51

integrated enterprise test." *Davis*, (quoting *Sandoval*, 578 F.3d at 796).  Plaintiff agrees

with Grand Aerie in that the facts of this case present a unique situation.

In *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), the Court

addressed a factual scenario where the aggrieved Plaintiff filed suit against a hospital

for whose patients he provided private nursing services.  Plaintiff alleged that the

hospital discriminated against him based upon his gender in its method of assigning him

patients/clients, in violation of Title VII.  The hospital was a private, non-profit hospital

and the patients paid the Plaintiff directly for his nursing services.  *Id.*  The Court

reviewed the statutory language of Title VII, explaining:

> The Act, in providing for the filing of complaints with EEOC and of
> eventual actions in the District Court, does not use the term "employee."
> The phrase is, rather, the "person aggrieved;" and that term can certainly
> be taken as comprehending individuals who do not stand in a direct
> employment relationship with an employer. The fact that the Act purports
> to provide remedies for a class broader than direct employees is a strong
> indication that the proscriptions contemplated by Section 703(a) (1) reach
> beyond the immediate employment relationship. It seems unlikely that
> Congress would confer standing to bring a suit under the Act upon
> persons without rights under the Act because they are not employees.

The *Sibley* Court concluded that because the Defendant hospital controlled the

Plaintiff's access to patients and ability to initiate employment, the hospital had "brought

itself within the strictures of Title VII." *Id.* at 1343.

As explained in Section 1(B) of this Brief, #200 and Grand Aerie have a "parent"

and "subordinate" relationship pursuant to their qualifications as IRS "fraternal benefit.

Admittedly, Plaintiff was hired by #200, as she was hired prior to #200's charter being

suspended.  However, Vince Kinman admits that he acted as Agent for #200 during the

time of the sexual harassment alleged in the Amended Complaint; that he was the

correct person for Plaintiff to call with her sexual harassment complaints and that he responded to Plaintiff's complaints; and that he had the ability to act on behalf of #200 in legal matters.   Ex. 4, 88:22-89:19.   As explained earlier in this Brief, all persons deposed in this case believed Kinman was "in charge" of #200.  Grand Aerie admits that Kinman was #200's agent.    At the time the sexual harassment occurred, #200 and Grand Aerie shared a common management – Vince Kinman.   Kinman told Eagles employees, including Plaintiff, that if any person at #200 had any problems or wanted to discuss anything, they should not hesitate to get in touch with him.  Ex. 3, 151:17-25. Kinman handed out his business cards to several people at that meeting.  Ex. 3, 151:24-152:9. Although it was not done in a timely manner, Kinman eventually suspended Clark for 90 days. The evidence established that due to the suspension of #200's charter, Kinman (and thus Grand Aerie) was the final decision-maker <u>for both entities</u> with respect to Plaintiff's complaints and Clark's behavior.  Further, Kinman was "linked to the discriminatory actions of Jeff Clark and other individuals associated with #200 by controlling individual employment decisions.  He was admittedly the decision-maker with respect to Plaintiff's complaints about Clark and with respect to Clark's suspension.

This Court recognized in *Davis, supra,* despite reaching a different conclusion in that case, that Title VII "is to be accorded a liberal construction in order to carry out the purposes of Congress[.]" *Baker,* 560 F.2d at 391 (quoting *Parham v. Sw. Bell Tel.,* 433 F.2d 421, 425 (8th Cir.1970)). "Such liberal construction is also to be given to the definition of 'employer.'  Grand Aerie stepped into the shoes of #200 during the time of

it's charter suspension and acted as Plaintiff's employer, making employment-related decisions, Grand Aerie was an "employer" for Title VII purposes.

**V.    SUMMARY JUDGMENT IS NOT APPROPRIATE WITH RESPECT TO PLAINTIFF'S SEX DISCRIMINATION CLAIM, AS THE EVIDENCE ESTABLISHES A PRIMA FACIE CLAIM AND THE RECORD COULD LEAD A RATIONAL TRIER OF FACT TO FIND FOR PLAINTIFF, AND THUS DEMONSTRATES THE EXISTENCE OF A GENUINE ISSUE OF   MATERIAL FACT FOR TRIAL.**

Plaintiff admits the McDonnell Douglas framework is appropriate.  To establish a prima facie case of race or gender discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Gibson v. American Greetings Corp.,* 670 F.3d 844, 853–54 (8th Cir.2012). *Bearden v. Int'l Paper Co.,* 529 F.3d 828, 831 (8th Cir.2008).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. If the defendant can articulate a nondiscriminatory reason, the burden shifts back to the plaintiff to show that the defendant's reasons were merely a pretext for illegal discrimination. *Id.* at 831–32

Here, there is no dispute that Plaintiff is a member of a protected class, as she is a woman.  The evidence also establishes that Plaintiff met her employer's expectations and Grand Aerie admits that Plaintiff was qualified for her bartender position. Local Chapter #200 has not offered evidence to the contrary.  At the very minimum, genuine issues of material fact exist with respect to (1) whether Plaintiff suffered an adverse

employment action and (2) whether the circumstances give rise to an inference of discrimination.

### A.      Plaintiff suffered an adverse employment action.

An "adverse employment action" is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge. *Jackman v. Fifth Judicial Dist. Dept. of Correctional Services*, __ F.3d __, (8th Cir. 2013).  In this case, Plaintiff suffered adverse employment actions because she was terminated.  Grand Aerie argues that "Plaintiff quit her employment;" however, the facts give rise to a genuine issue of material fact as to this issue.

On or about December 18, 2009 Plaintiff was terminated from employment at #22 when the bar manager stopped putting her on the work schedule. Ex. 3, 182:6-23. She was asked to come to #200 for a "meeting;" however, it was clear that the Trustees simply wanted Plaintiff to return her building key.   Ex. 3, 182:10-18; 184:19-185:12. Prior to December 18, 2009, Plaintiff had never been disciplined in any way in her bartending position with the Eagles.  Ex. 3, 79:24-1.  She was told she was doing a good job.  Ex. 3, 79:19-23. Plaintiff had the distinct feeling and impression that the Trustees at #200 stopped scheduling her to work and terminated her because she had complained about Jeff Clark's sexual harassment.   Ex. 9, ¶ 6.  In contrast, Clark's membership at #200 was never terminated and he continues to be a member of #200. Ex. 6, 16-23.  Plaintiff did not witness Jeff Clark make sexually inappropriate statements or gestures to male employees of Chapter #200 in the same way that Jeff Clark did to

Plaintiff.  Ex. 9, ¶.  Local Chapter #200's actions in no longer putting Plaintiff on the work schedule constituted termination of Plaintiff's employment.  This was a "tangible change in working conditions that produc[ed] a material employment disadvantage."  See, *Pye v. Nu Aire, Inc.* 641 F.3d 1011, 1019 (8th Cir. 2011).  The record taken as a whole could lead a rational trier of fact to find that Plaintiff was terminated.  Further, there are disputed facts from which a jury could find that (1) Plaintiff's termination was made under circumstances that give rise to an inference of unlawful discrimination and (2) #200's/Grand Aerie's termination of Plaintiff was merely a pretext for illegal discrimination. At minimum, there is a material issue of fact relative to Plaintiff's termination, which precludes summary judgment.

**B.      Issues of fact remain as to whether the circumstances give rise to an inference of discrimination.**

The required prima facie showing as to this issue is a flexible evidentiary standard and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker. *Pye, supra.*  In this case, Clark returned from his suspension and was allowed to hold the position of "entertainment chairperson." Ex. 3, 180:21-181:6; Ex. 4, 93:14-18.  After suspending Clark, Kinman did not conduct any investigation into the work environment at #200; did not speak to anyone about Clark; was not concerned that #200 had a sexual harassment problem; and did not feel it was necessary to follow up with respect to the situation with Clark.  Ex. 4, 81:16-84:2.

Plaintiff had not been disciplined at any time before December 18, 2009 and by all accounts, her work performance was satisfactory.  Plaintiff had the distinct feeling and impression that the Trustees at #200 stopped scheduling her for work and terminated her because she had complained about Jeff Clark's sexual harassment.  Under these facts, the jury should be left to decide whether the circumstances give rise to an inference of discrimination.  As  "satisfaction of an essential element of a claim for relief is at issue," thus the jury is the proper trier of the contested facts.  See, *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 504 (2006).

**VI.   SUMMARY JUDGMENT IS NOT APPROPRIATE WITH RESPECT TO PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM, AS THE RECORD COULD LEAD A RATIONAL TRIER OF FACT TO FIND FOR PLAINTIFF AND THUS DEMONSTRATES THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT FOR TRIAL.**

To succeed on a claim for a hostile work environment, plaintiff must establish: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; and (4) the harassment affected a term, condition, or privilege of employment. *Mullen v. Shinseki*, 2012 WL 484889 (D.Neb. 2012) (quoting *Tademe v. Saint Cloud State Univ.,* 328 F.3d 982, 991 (8th Cir.2003));  *Quick v. Donaldson Co., Inc.* 90 F.3d 1372, 1377 (8th Cir. 1996).

**A.   Plaintiff is a member of a protected class.**

There is no dispute that Plaintiff is a member of a protected class, as she is female.

### B.      Plaintiff was subject to unwelcome harassment.

Grand Aerie does not appear to dispute that Plaintiff was subject to unwelcome harassment, as it primarily argues that the harassment was not sufficiently severe to result in a hostile work environment.  Harassing conduct is considered unwelcome if it was "uninvited and offensive."   The question of whether particular conduct was unwelcome will turn largely on credibility determinations by the trier of fact.  *Id.*   The type of conduct that may constitute sexual harassment includes sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. 29 C.F.R. § 1604.11(a).  *Quick v. Donaldson Co., Inc.*  90 F.3d 1372, 1377 (8th Cir. 1996). Here, Jeff Clark's sexual requests, insult, and discriminatory intimidation was uninvited and offensive to Plaintiff.  Ex. 9, ¶ 3.  Plaintiff felt demeaned and humiliated by Clark's behavior toward her.  Ex. 9, ¶ 3.  Defendants have offered no evidence, and no evidence exists, to the contrary, thus summary judgment is precluded.

### C.      The harassment complained of was based upon Plaintiff's sex.

The Eighth Circuit has held that Evidence that members of one sex were the primary targets of the harassment is sufficient to show that the conduct was gender based for purposes of summary judgment.  *Quick v. Donaldson Co., Inc.*  90 F.3d 1372, 1377 (8th Cir. 1996).  Further, When "sexual behavior [is] directed at a woman [it] raises the inference that the harassment is based on her sex." *Sheriff v. Midwest Health Partners, P.C.*,  619 F.3d 923, 929 (8th Cir. 2010). The key inquiry is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. *Moring v. Arkansas Dept. of Correction*, 243 F.3d 452 (8th Cir. 2001) (quoting *Quick v. Donaldson Co.,* 90 F.3d 1372, 1378 (8th

Cir.1996)   In *Moring*, the harasser "engaged in conversation of a sexual nature on the drive to Calico Rock, appeared barely clothed at the plaintiff's door, sat on her bed, touched her thigh and attempted to kiss her."   The jury awarded damages to the Plaintiff.   The Eighth Circuit upheld the trial court's denial of the defendant's motion for judgment as a matter of law, explaining:

> there was sufficient evidence to support a reasonable jury finding that Mr. Smith's conduct was based on Ms. Moring's gender.  A reasonable jury could find that this conduct would not have been directed at a male employee. Likewise, there was evidence that the conduct was uninvited. Ms. Moring asked Mr. Smith to leave her room several times, and she resisted his advance. She also testified that she was afraid and considered Mr. Smith's behavior abusive and threatening.

*Id.* at 456.   In this case, Clark repeatedly approached Plaintiff and demanded that she give him a "blow job." Further, he said to Plaintiff in front of other employees, "Hey **bitch**, crawl under this desk and get started on your job."   Clark leaned back in his chair while he said this and gestured to his genitals.  Ex. 3, 140:22-9.  Further, Plaintiff did not witness Jeff Clark make sexually inappropriate statements or gestures to male employees of Chapter #200 in the same way that Jeff Clark did to her.   Ex. 9, ¶8. Plaintiff became scared to be alone with Clark.   Ex. 9, ¶ 5.   She considered Clark's behavior embarrassing and threatening.  Further, Clark also directed sexual statements, derogatory remarks, and offensive touching toward another female bartender at #200, Katrina Holtorf.   The sexual nature of Clark's conduct justifies an inference that it was sexually discriminatory.   See, *Sheriff v. Midwest Health Partners, P.C.*  619 F.3d 923, 930 (8th Cir. 2010).  There is sufficient evidence from which a jury could find that Clark's conduct would not have been directed at male employees, thus summary judgment is precluded.

**D.    The harassment affected a term, condition, or privilege of employment.**

This factor means that the workplace is permeated with "discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Quick*, supra; *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Whether an environment is hostile or abusive cannot be determined by a "mathematically precise test"; it entails consideration of the entire record and all the circumstances. *Id.* There is no particular factor that must be present, but conduct that is merely offensive is insufficient to implicate Title VII. A court evaluating a Title VII claim must evaluate the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Leiting v. Goodyear Tire & Rubber Co*., 117 F.Supp.2d 950, 962 - 963 (D.Neb.2000); *Klein v. McGowan,* 198 F.3d 705, 709 (8th Cir.1999) A work environment is shaped by the accumulation of abusive conduct, and the resulting harm cannot be measured by carving it "into a series of discrete incidents." *Sheriff v. Midwest Health Partners, P.C*., 619 F.3d 923 (8th Cir. 2010); *Hathaway v. Runyon,* 132 F.3d 1214, 1221–22 (8th Cir.1997)(quoting *Burns v. McGregor Elec. Indus., Inc.,* 955 F.2d 559, 564 (8th Cir.1992)).

Whether inappropriate conduct rises to the level of sexual harassment is usually a factual determination for the jury.  *Moring v. Arkansas Dept. of Correction,*  243 F.3d 452, 456 (8th Cir. 2001).   Once there is evidence of improper conduct and subjective

offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury. *Howard v. Burns Bros., Inc.,*149 F.3d 835, 840 (8th Cir.1998). Grand Aerie attempts to "carve the resulting harm into a series of discrete incidents" by providing an "itemized list" of Plaintiff's claims; however, Grand Aerie's lists fall short of the facts and fail to recognize that a work environment is shaped by the accumulation of abusive conduct.  Grand Aerie dismissively argues "there are only four alleged incidents over a two month period of time."   Parceling out the sexual harassment that Plaintiff endured into incidents minimizes the serious, offensive, and humiliating nature of the harassment that occurred in this case.  The Eighth Circuit has held that **one** unwelcome incident may be sufficiently severe to alter the terms and conditions of one's employment.  In *Moring v. Arkansas Dept. of Correction*, 243 F.3d 452, 456 (8th Cir. 2001), the harasser was Plaintiff's supervisor.  The two were on an overnight business trip.  The supervisor knocked on the Plaintiff's door, was scantily clothed, and stated that he believed the Plaintiff "owed" him for her job.  The supervisor then sat on the bed, touched Plaintiff's thigh, and leaned in as if to kiss her.  *Id.* at 456.   The defendant/employer argued that the harasser's behavior was not sufficiently severe to alter the terms and conditions of employment, because it was one isolated incident. The Court disagreed, explaining:

> we are unaware of any rule of law holding that a single incident can never be sufficiently severe to be hostile-work-environment sexual harassment . . . This was sufficient evidence to support a reasonable jury's finding that the incident at the hotel was severe enough to alter the terms and conditions of Ms. Moring's employment. Thus, considering the evidence in the light most favorable to Ms. Moring, and giving her the benefit of all reasonable inferences, we hold that the District Court did not err in denying the motion for judgment as a matter of law.

*Id*. at 457.  In this case, there is evidence from which a reasonable person could find the workplace at #200 to be hostile and abusive. Jeff Clark's multiple verbal sexual requests to Plaintiff were not "mere offensive utterances," but were threatening, humiliating, and directed specifically toward Plaintiff in an attempt to intimidate her.   Plaintiff was repeatedly approached by Jeff Clark, in a threatening and intimidating manner and asked to give Clark "blow jobs."  Clark would do this while Plaintiff was standing behind the bar and had no means of escaping him.   Clark would lean over the bar in a very threatening and intimidating way and say "I'll be back later for that blow job, Debra."  Ex. 9, ¶ 4.   Clark would make eye contact with Plaintiff while she was behind the bar and look at Plaintiff in a very threatening and menacing manner.   Plaintiff felt that he was trying to intimidate her with his sexual comments.   Ex. 9, ¶ 4, 5. On at least one occasion, Clark's remark was witnessed by an Eagles club member.   Ex. 3, 137:12-21.

Clark held a staff meeting in his office at #200.  Ex. 3, 139:23-141:18.  Plaintiff, Katrina Holtorf, Mike Saxton, Jodi Cartwright, and Cheri Bollig were present.   Ex. 2, 153:10-13; Ex. 3, 140:24-141:10.  Clark started the meeting by putting his leg up on his desk, which revealed that Clark had a huge hole in his pants in the crotch area.   Clark also scratched his crotch area during the entire meeting.  Ex. 2, 153:2-21. As Plaintiff walked into the office, Clark said to her, in front of other employees, "Hey **bitch**, crawl under this desk and get started on your job."   Clark leaned back in his chair while he said this and gestured to his genitals.   Ex. 3, 140:22-9.   Plaintiff was humiliated by Clark's behavior toward her and became scared to work alone with Clark. Plaintiff would have her husband and son come to the Local Chapter 200 while she was closing up so that she did not have to be alone with Clark.   Ex. 9, ¶ 5.   Plaintiff became terrified to

walk to her car by herself.  Her heart would start pounding so hard that it felt like it would jump out of her chest.  One night Plaintiff was so afraid of Clark following her to her car that she called the Fremont Police Department and asked if an officer could come sit in the parking lot in a car while Plaintiff walked to her car.   The police department sent an officer to do so.  Ex. 9, ¶ 5.

Sufficient evidence exists to create a material fact dispute as to the frequency, severity and pervasiveness of the harassment in the work environment at #200 such that Sufficient evidence and inferences therefrom exist that there was an ongoing use of sexual vulgarity directed at plaintiff as well as other women employees, therefore the issue must be resolved by the jury and summary judgment is precluded.   A rational juror, when considering all the evidence, could certainly find that the work environment at #200 was objectively and subjectively abusive. Plaintiff was subjected to constant, humiliating, and offensive sexual comments and requests during a short period of time. The broad rule of workplace equality under Title VII strikes "at the entire spectrum of disparate treatment of men and women in employment" in order to provide a workplace free of "discriminatory intimidation, ridicule and insult."  *Quick v. Donaldson Co., Inc*.  90 F.3d 1372, 1377 (8th Cir. 1996) The sexual harassment at issue unreasonably interfered with Plaintiff's work performance.   The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Hocevar v. Purdue Frederick Co*.  223 F.3d 721, 728 (8th Cir. 2000)  The evidence is not so one-sided that Grand Aerie must prevail as a matter of law, therefore it must be submitted to a jury.

**E.     Grand Aerie failed properly to remedy the harassment it knew about.**

Further, issues of material fact remain as to whether #200 and Grand Aerie took reasonable remedial action to end the harassment at issue.  To prevail on a claim for hostile work environment, the plaintiff must establish "the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." *Quick, supra*. When analyzing whether the defendants took reasonable remedial measures to end the harassment, a court will analyze: the amount of time elapsed between the notice of harassment, which includes but is not limited to a complaint of sexual harassment, and the remedial action, and the options available to the employer such as employee training sessions, disciplinary action taken against the harasser(s), reprimands in personnel files, and terminations, and whether or not the measures ended the harassment.  *Sheriff v. Midwest Health Partners*, P.C.  2009 WL 2992513, 7 (D.Neb.2009).   Genuine issues of material fact remain with respect to this issue such that summary judgment is precluded.

In this case, it cannot be said as a matter of law that Kinman took reasonable remedial measures to end the harassment after Plaintiff first telephoned him. As an initial matter, an issue of fact remains as to whether three weeks between Plaintiff's report of Clark's harassment and Kinman's suspension of Clark was reasonable.  A jury could conclude based upon the evidence that Plaintiff first called Kinman in early May 2009; that Kinman took no action to investigate Plaintiff's complaints after the first telephone call; that after enduring continued sexual harassment and seeing no response from Kinman or anyone else at #200, Plaintiff called Kinman a second time and asked why nothing was being done about Clark's behavior; that Kinman did not

speak to anyone at #200 or take any action to investigate Plaintiff or Katrina Holtorf's complaints from the time Plaintiff called him in May until June 3, 2009, at which time he received a telephone call from Cheri Bollig, an employee at #200, who told Kinman that Clark had admitted to the sexual harassment described by Plaintiff and Katrina Holtorf. After making the bar manager, Mike Saxton, and the Field Service Manager, Vince Kinman, aware of Clark's behavior, Plaintiff believed she would find some relief from Clark's constant barrage of insulting and offensive behavior.  However, Clark's behavior was not addressed in a timely manner and Clark's insults and "blow job" comments continued.  Ex. 9, ¶ 11.

Title VII is a remedial statute intended to eliminate the inconvenience, unfairness, and humility of discrimination. *Sedlacek v. Hach,* 752 F.2d 333, 337 (8th Cir. 1985). In considering a motion for summary judgment, the district court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter, *id.* at 249, 106 S.Ct. 2505, but instead should give all reasonable inferences to the non-moving party.  To survive summary judgment, Plaintiff need only submit "'sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact.' " *Austin v. Minnesota Mining & Mfg. Co.,* 193 F.3d 992, 994 (8th Cir.1999)  Genuine issues of material fact remain as to the timeliness and sufficiency of Grand Aerie's response to Plaintiff's complaints such that these issues must be considered by the jury.

<u>CONCLUSION</u>

For the foregoing reasons, Fraternal Order of the Eagles, Local Chapter 200 and Grand Aerie of the Fraternal Order of Eagles' Motions for Summary Judgment must be denied.


DEBRA SORENSEN, Plaintiff


By:     s/Michelle D. Epstein
        Michelle Epstein, #21936
        Jason G. Ausman #22261
        AUSMAN LAW FIRM PC LLO
        1015 N. 98th Street, Ste. 102
        Omaha, NE  68114
        Telephone: 402-933-8140
        Facsimile:  402-718-9423
        michelle@ausmanlawfirm.com


**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2013, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

Christopher E. Hoyme
Susan M. Schneider
Travis T. Bennington


s/Michelle D. Epstein